# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| SHELBY HOOD, | ) |
| | ) |
|    PLAINTIFF, | ) |
| | ) |
| V. | ) |
| | )   Case No. |
| LIPSCOMB UNIVERSITY, | ) |
| | ) |
|    DEFENDANT. | ) |

## COMPLAINT

Comes Plaintiff, Shelby Hood, and brings this cause of action against Defendant, Lipscomb University, for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 *et seq*. and for violation of the Tennessee Human Rights Act, T.C.A. §4-21-101 et seq. (hereinafter "THRA").

## PARTIES

1. Shelby Hood (hereinafter "Plaintiff") is a resident of California and was both a student, and an employee of Defendant under the THRA.

2. Lipscomb University (hereinafter "Defendant") is a Tennessee nonprofit corporation, operating as a university, with the Lipscomb Family Therapy Center (hereinafter "LFTC"), operating within the university. Lipscomb is also an employer as defined by the THRA.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 *et seq*.

4. Jurisdiction of the Tennessee Human Rights Act, T.C.A. §4-21-101 et seq. (hereinafter "THRA"), this Court has jurisdiction pursuant to 28 U.S.C § 1332 as the parties are citizens of

separate states and the amount in controversy exceeds $75,000.

5. Venue is proper, as the acts complained of occurred in the Middle District of Tennessee, namely in Nashville, Tennessee.

**FACTS**

6. Dr. Justin Briggs, a Lipscomb University employee, associate professor and clinical director of Lipscomb's Marriage and Family Therapy program (hereinafter MFT), tenured professor, director of the Lipscomb Family Therapy Center (hereinafter LFTC) and the Briggs Institute co-founder and president, and was the central figure in the allegations asserted in this case, all of which occurred at Lipscomb.

7. Plaintiff was a graduate student in Defendant's MFT program and performed her clinical work seeing clients/patients in the LFTC. Plaintiff was therefore a student and an employee of the Defendant.

8. As the clinical director of the LFTC, Dr. Briggs utilized his license to allow Plaintiff and the other student therapists to see and treat clients/patients at LFTC.

9. Defendant charged the clients/patients for the therapy sessions and Plaintiff was responsible for ensuring the payments were made. Plaintiff and the other student/therapist relied upon Dr. Briggs' license to allow Plaintiff to conduct her therapy sessions through LFTC, a business directly benefiting Defendant.

10. Plaintiff conducted the paid therapy sessions under the control and supervision of Defendant and its employees.

11. Plaintiff was required to conduct 300 direct client contact hours of therapy sessions with patients to complete her degree requirements, and she was given credit for the therapy sessions she performed.

12. In every aspect, other than being paid, Plaintiff was treated and supervised as an

employee of the LFTC.

13. Prior to the harassing conduct of Briggs toward Plaintiff, complained of herein, Defendant was aware that Dr. Briggs had a history of discriminating and sexually harassing female students at Lipscomb University.

14. Plaintiff became aware of Dr. Briggs' past harassments while she was attending Lipscomb, and the knowledge of his past behaviors contributed to the hostile environment to which she was subjected.

15. Defendant failed to take timely and appropriate action to either correct the prior known harassing and offensive behavior of Dr. Briggs or separate him from female students in the program, to protect them from the known harassing behavior, which failure allowed the harassment of Plaintiff to occur, in violation of the THRA.

16. The inadequacy, or nonexistence, of corrective action to prevent ongoing harassment of female students by Dr. Briggs was the result of Defendant's deliberate indifference to reports of sexual harassment of female students within the MFT and LFTC of Defendant. This failure created a heightened risk of sexual harassment within these programs that was known or obvious. The Defendant had the authority and ability to stop and/or prevent this continued harassment by a particular Professor. As a result, the Plaintiff suffered harassment that was so severe and objectively offensive that it deprived the Plaintiff of educational opportunities, in violation of Title IX, analyzed as a "Before" theory.

17. Plaintiff was subjected to sexual assault in Franklin, TN in February of 2023.

18. On June 6, 2023, Dr. Briggs, aware of Plaintiff's sexual assault via communication with other faculty members, proceeded to ask inappropriate, intrusive questions regarding intimate details of the incident as well as talk about other sexually inappropriate topics with Plaintiff. Dr.

Brigg's actions subjected Plaintiff to a sexually charged, hostile environment by a tenured professor who had direct influence over Plaintiff's educational opportunities and future professional endeavors.

19. During the June 6, 2023 conversation, amongst other sexually offensive comments, Dr. Briggs informed Plaintiff that his best friend's wife referred to his friend's penis as a "Hog". He brought up a class that he taught regarding sex, couples therapy and intimacy, and told Plaintiff that 10-12 other female students had complained about him and the class. He stated he was called perverse and that the students claimed he unnecessarily made them watch self-drawn pornography and that he was a clinical narcissist. Briggs also talked about desensitization and physical intimacy, as well as his own sex life. Briggs asked about Plaintiff's future sexual experiences and commented on her physical appearance. Briggs prodded for details about Plaintiff's sexual assault including whether there was any tearing and bleeding and other inappropriate questions. This conversation was unrelated to any ongoing class or project that Plaintiff was taking from Dr. Briggs.

20. On June 16, 2023, Plaintiff reported Dr. Briggs' comments to Dr. Meghan Lacks, a Lipscomb employee and professor in the MFT program who then informed Dr. Amber Kelley, assistant professor and co-director of Lipscomb's MFT program.

21. Plaintiff was told that Dr. Briggs had a history of making inappropriate comments towards female students and that both Dr. Lacks and Dr. Kelley were aware of it. Dr. Lacks expressed frustration that the behavior was continuing, and that Plaintiff had been subjected to the ongoing sexually offensive behavior.

22. Plaintiff filed a formal complaint with the Title IX Coordinator on September 7, 2023.

23. During the Title IX investigation, Dr. Briggs came after Plaintiff, asserting, among other things, that Plaintiff is a "volatile, unstable person whose perspective on the world cannot be trusted." He went on to say that he'd "heard she was mentally unstable and a risk to her clients."

24. Despite the nature of the comments, many of which were admitted by Dr. Briggs, Defendant ultimately determined the discussion was not severe and objectively offensive when viewed by a reasonable person. Defendant further found the behavior was not pervasive as it occurred on one occasion. Defendant therefore dismissed Plaintiff's Title IX complaint.

25. Defendant was fully aware that Dr. Briggs' inappropriate behavior was a pattern that had occurred over a period of time with multiple students and, therefore, was pervasive conduct. The conduct of Dr. Briggs on June 6, 2023 took place on campus, while he had Plaintiff alone in his private office, and was objectively offensive on its face.

26. Dr. Briggs was exonerated by Defendant and no formal sanctions were imposed and Plaintiff was left unprotected at Lipscomb.

27. After Plaintiff filed the complaint against Dr. Briggs, Defendant, through Briggs, began to retaliate against Plaintiff, including the comments cited in ¶23 above. Further, Briggs solicited negative comments and false statements from other faculty members in an effort to remove Plaintiff from the program.

28. The retaliation culminated when Defendant alleged that Plaintiff had violated client confidentiality. The allegation was then used to prevent Plaintiff from seeing patients in the LFTC, and set up other barriers, not in place for other students, that delayed her graduation for at least two years, which created a financial impossibility for Plaintiff. The barriers, which were set out in a January 22, 2024 "Clinical Practice Improvement Plan" from Defendant to Plaintiff, prohibited Plaintiff from getting her degree as scheduled and likely permanently.

29. The alleged "violation" of breaching client confidentiality, stemmed from Plaintiff sending an email to her lawyer, who was advising her in the Title IX investigation. As an attorney, she was required to abide by ethical obligations not to share the document with anyone, outside of the investigation. Further, Defendant's Title IX Coordinator and the Plaintiff's Title IX investigator told her that all documents within the investigation were confidential. Most importantly, the alleged identifying information of the client/patient was a coded number that could not be broken and have identifiable client information available to anyone without the code, per Defendant.

30. The reason noted in ¶29 above for punishing and retaliating against Plaintiff of claiming breached client confidentiality was an effort to disguise blatant retaliation, which interfered with, and prevented, Plaintiff from obtaining her degree.

31. The reason noted in ¶29 above further did not justify the punishment and was different from the treatment of another student who had left their iPad, containing confidential client information in a common area, evidencing a discriminatory motive toward Plaintiff.

32. Plaintiff brought a sexual harassment claim against Briggs, a power broker and money maker for Defendant, and in retaliation, Defendant ran her out of the school.

33. Defendant, in the Title IX investigation failed to address the "Before Theory" due to the prior behavior of Dr. Briggs and the Plaintiff's retaliation claim for her Clinical Practice Improvement Plan which effectively prohibited her degree was never given a hearing or addressed in the March 8, 2024 investigative report on retaliation.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE IX HOSTILE ENVIRONMENT "Before Theory"

34. Plaintiff asserts that the conduct set forth above, constitutes a violation of Title IX of the Education Act of 1972, 20 U.S.C.§1681(a) *et seq*.

35. Plaintiff asserts that Defendant failed to comply with Title IX through deliberate indifference by unreasonable acts and omissions which allowed Dr. Biggs to continue harassing female students, such as the Plaintiff, within the MFT and LFTC of Defendant. This known and obvious heightened risk allowed the harassment of Plaintiff and interfered with her educational opportunities at Lipscomb University.

## COUNT II
## VIOLATION OF TITLE IX RETALIATION

36. Plaintiff asserts that the conduct set forth above, constitutes a violation of Title IX of the Education Act of 1972, 20 U.S.C.§1681(a) *et seq*.

37. Plaintiff asserts that Defendant retaliated against Plaintiff because she complained about the sexual harassment and discrimination by Dr. Briggs that formed the basis of her hostile environment claim under Title IX.

## COUNT III
## VIOLATION OF THRA HOSTILE WORK ENVIRONMENT

38. Plaintiff asserts that the conduct set forth above, constitutes a violation of the Tennessee Human Rights Act, T.C.A. §4-21-101 et seq.

39. Plaintiff asserts that Defendant allowed a hostile work environment to exist through its employees' actions and omissions set forth above.

## COUNT IV
## VIOLATION OF THRA RETALIATION

40. Plaintiff asserts that the conduct set forth above, constitutes a violation of the Tennessee Human Rights Act, T.C.A. §4-21-101 et seq.

41. Plaintiff asserts that Defendant retaliated against Plaintiff because she complained about the sexual harassment and discrimination by Dr. Briggs that formed the basis of her hostile environment claim under the THRA.

## DAMAGES

42. As a result of Defendant's acts and omissions as set forth above, Plaintiff has suffered a loss of educational opportunity. This would include the money spent prior to her leaving Lipscomb University on her education. This further includes loss of earning capacity due to the failure to obtain her degree. This further includes any additional educational expenditure incurred or that will be incurred in trying to obtain her degree at another educational institution.

43. As a result of Defendant's acts and omissions as set forth above, Plaintiff has suffered emotional injuries past and future and sues for these emotional injuries and resulting medical expenses.

## PRAYERS FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

1. That process issue, requiring Defendant to answer within the time provided by law.

2. For an award of any and all damages available under Title IX in the amount of $2,500,000.00.

3. For an award of any and all damages available under the THRA $2,500,000.00.

4. For reasonable attorney's fees pursuant to 42 U.S.C. §1988(b), the THRA, and/or other statutory authority.

5. For such further relief that this Court deems proper.

Respectfully submitted,

s/ Stephen Crofford
Stephen Crofford #12039
Mary Parker #6016
**PARKER & CROFFORD**
5115 Maryland Way
Brentwood, TN 37027
Tel.: 615-244-2445
Fax: 615-255-6037
stephencrofford@msn.com
mparker@parker-crofford.com

*Attorneys for Plaintiff*